```
                                                    CLERKS OFFICE U.S. DIST. COURT
                                                          AT ABINGDON, VA
                                                               FILED
        IN THE UNITED STATES DISTRICT COURT
       FOR THE WESTERN DISTRICT OF VIRGINIA                 July 30, 2025
                 ABINGDON DIVISION                      LAURA A. AUSTIN, CLERK
                                                       BY: s/ FELICIA CLARK
                                                            DEPUTY CLERK
```

| | |
|---|---|
| **WILLIAM HEIM, by his guardian, Nicole Marie Brittain,** | ) ) ) |
| Plaintiff, | ) ) Case No. 1:25CV00004 |
| v. | ) ) **OPINION AND ORDER** |
| **ZACHARY PUCKETT, et al.,** | ) ) JUDGE JAMES P. JONES |
| Defendants. | ) ) ) |

*Matthew J. Moynihan, BISCHOFF MARTINGAYLE, P.C., Norfolk, Virginia, and Alexis I. Tahinci, TAHINCI LAW FIRM PLLC, Kingsport, Tennessee, for Plaintiff; Julian F. Harf and James T. Taylor, SPILMAN THOMAS & BATTLE, PLLC, Roanoke, Virginia, for defendants Jenny Bain, Thomas Bettinger, Kaitlyn Stuart, Jock Songer, Christopher Willard, Kimberly D. Haug, and the New River Valley Regional Jail Authority.*

The plaintiff William Heim, a truck driver, suffered a stroke and as a result was involved in a highway accident. Instead of providing him with medical treatment, it was concluded by a police officer that he was intoxicated, and he was arrested and jailed. He alleges that jail employees failed to seek medical care for him, even though he continued to show the effects of the stroke. He claims that when he finally did receive medical care, some 30 hours later, he was not a candidate for treatment that would have prevented the permanent and extensive consequences he suffers from the stroke.

Based on the subject-matter jurisdiction of this court under 42 U.S.C. § 1983 and 28 U.S.C. § 1367, the plaintiff asserts multiple state and federal claims for deliberate indifference, gross negligence, and supervisory liability. All but one of the defendants now move to dismiss the Complaint on multiple grounds, including qualified immunity and the statute of limitations. For the reasons that follow, I must grant in part and deny in part the defendants' Motion to Dismiss.

BACKGROUND.

I must accept the following facts from the Second Amended Complaint (the Complaint) as true for the purpose of evaluating the Motion to Dismiss.

On April 26, 2023, in Wytheville, Heim was operating a tractor trailer within the scope of his employment when he suffered a stroke. His tractor trailer was then involved in an accident. Defendant Zachary Puckett, a police officer for the Town of Wytheville, arrived to investigate. John Khachane and Tommy Lester, also police officers, assisted Puckett's investigation.[1] Puckett determined that Heim was disoriented, gazed off into the distance, and discussed a motel instead of the accident. He assumed Heim was under the influence of an unknown substance and administered four roadside sobriety tests, including an alphabet test and a finger dexterity test. Heim failed all of them. Puckett performed a preliminary breath test

---

[1] While Heim originally named Khachane and Lester as defendants, he voluntarily dismissed them from this suit. Stipulation of Dismissal, ECF No. 34. Puckett is the only responding police officer remaining in this suit.

and alleged that it returned a result of 0.01 — which Heim contends was a false positive — and arrested Heim.  He searched Heim's tractor trailer and did not locate any alcohol, narcotics, or narcotic paraphernalia.  He also administered a blood draw after he believed Heim consented to it.  At no point during his investigation or the arrest did Puckett, Khachane, or Lester provide any emergency medical services or call for emergency medical service providers to the scene of the accident.  Nor did they examine him for injuries or consider an explanation besides intoxication for his disorientation, confusing answers, and inability to focus.  This is despite that Heim's symptoms were classic indicators of a stroke, and the officers' training meant they knew or should have known that he was suffering from a serious medical emergency.

 Puckett then transported Heim to the New River Valley Regional Jail.  For the entire time he was there, he was disoriented, confused, mumbling, and incontinent.  He had never been detained there or interacted with any of the defendants before.  At some point while at the jail, Heim had a drug screen, which was negative.  Defendants Jenny Bain, Thomas Bettinger, Kaitlyn Stuart, Jock Songer, and Christopher Willard were all correctional officers there, and they all had duties to make rounds.  Part of those duties involved physically observing Heim to ensure his well-being.  Bain and Bettinger signed multiple logs indicating they observed Heim at various intervals from the time he was committed to the jail after 2:30 p.m. until the end of their shifts at 6:00 p.m.  They did not offer him any medical assistance

that day. Stuart, Songer, and Willard had the same duties for their shift, which ran from 6:00 p.m. on April 26 until 6:00 a.m. on April 27. They also signed multiple logs indicating they observed Heim during the shift, but did not offer him medical assistance. Bain and Bettinger returned for the day shift at 6:00 a.m. on April 27, again signed logs that they had observed Heim, and did not offer him medical assistance until at least late in the afternoon. This is all despite Heim's symptoms, his negative drug screen, and his 0.01 result on the breath test.

At about 4:45 p.m. on April 27, Bain called Heim's sister, Angela Strater, to ask her to pick him up from the jail. She told Strater that Heim had been disoriented and incontinent the entire time he had been there and asked if that was usual behavior for him. Strater "forcefully informed" her it was unusual. Second Am. Compl. 9, ECF No. 19. Bain twice brushed off Strater's requests that Heim get medical attention stating "we have no medical assistance at the jail" and "we don't have anyone here who can help him." *Id.* After Strater insisted a third time, Bain sent Heim to the jail's medical department. There, he received a urine test and a blood glucose test, which both returned normal results. At that point, emergency responders transported Heim to the New River Valley Medical Center at about 6:21 p.m. This was about 30 hours after the accident.

At the medical center, tests confirmed Heim had suffered an acute stroke. He was then transferred to Lewis Gale Medical Center, who again confirmed the stroke.

-4-

Heim alleges that because of the police and correctional officers' delay in seeking medical help for him, he was not a candidate for tissue plasminogen activator treatment. This treatment must be administered within three to four hours of a stroke. Because of his extensive injuries, Heim has since been placed under a guardianship and requires 24-hour assistance, seven days a week.

Heim brings seven separate claims. Counts I and III are against Puckett. They allege a deprivation of civil rights under 42 U.S.C. § 1983 for the denial of medical care and gross negligence, respectively. Counts II and IV are the same, but are against the correctional officers Bain, Bettinger, Stuart, Songer, and Willard. Count V is a supervisory liability claim against Kimberly D. Haug, the Superintendent of the New River Valley Regional Jail Authority (Jail Authority). Counts VI and VII are respectively a *Monell* claim and a vicarious liability claim for gross negligence, both against the Jail Authority. Each count demands $10 million in compensatory damages plus pre- and post-judgment interest and $350,000 in punitive damages plus pre- and post-judgment interest.

All of the remaining defendants except Puckett move to dismiss the claims against them. Because only Puckett is named in Counts I and III, those counts are not challenged in the Motion to Dismiss. For the other counts, the defendants argue that the statute of limitations, qualified immunity, and Heim's failure to allege a constitutional claim or gross negligence claim against any defendant require

dismissal of the Complaint. For the reasons that follow, I will grant in part and deny in part the Motion to Dismiss and grant Heim leave to amend his complaint.

I. STANDARD OF REVIEW.

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, the plaintiff must state "a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon its "judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In evaluating a pleading, the court accepts as true all well-pled facts. *Id*. A complaint does not need detailed factual allegations to survive a motion to dismiss; however, it must have more than labels and conclusions or a recitation of the elements of the cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

To state a claim under § 1983, a plaintiff must allege that a right secured by the Constitution or laws of the United States was violated by "a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

## II. DISCUSSION.

### A. Count II for § 1983 Claim Against the Correctional Officers.

The defendants move to dismiss Heim's claim under § 1983 alleging that the correctional officers were deliberately indifferent to his serious medical needs. To state this claim, Heim must plead

> that (1) [he] had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant[s] intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant[s] knew or should have known (a) that [Heim] had that condition and (b) that the defendant[s'] action or inaction posed an unjustifiably high risk of harm; and (4) as a result, [Heim] was harmed.

*Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 2631, (2024). The defendants argue that Heim failed to demonstrate that they knew or should have known he had a serious medical condition requiring immediate treatment before Bain's call with Strater. They contend that they were not involved in Heim's arrest, had never interacted with him before, and had no prior knowledge of his medical history. Instead, Heim's only allegation is that they made rounds to observe him, but his symptoms would not indicate to them that he needed immediate treatment. And for Bain specifically, she eventually did send him for medical treatment, so she could not have been deliberately indifferent.

To further support their argument, the defendants cite *Grayson v. Peed* and analogize to the facts in that case. 195 F.3d 692, 695 (4th Cir. 1999). *Grayson* held that deliberate indifference is a "very high standard" and affirmed a district court's grant of summary judgment for officers who had been accused of deliberate indifference to an arrestee's serious medical needs. *Id.* at 695.

In *Grayson*, Gerald Anthony Collins was arrested after he acted irrationally, had slurred speech, and was found to be in possession of drugs. The arresting officers took him to a detention center instead of obtaining medical care for him, and he was declared brain dead at a hospital the day after his arrest. The Fourth Circuit affirmed that the defendants were not deliberately indifferent because "[t]o accept . . . [otherwise] would be to mandate as a matter of constitutional law that officers take all criminal suspects under the influence of drugs or alcohol to hospital emergency rooms rather than detention centers." *Id.* at 696. Taking Collins to the detention center instead of a hospital was, "[a]t the most," a "simple mistake. But the Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences." *Id.* at 695–96.

However, the facts alleged here are significantly different from those in *Grayson*. Heim was arrested under suspicion of DUI following a motor vehicle accident, but Puckett searched his truck and found no alcohol, drugs, or drug

-8-

paraphernalia. His preliminary breath test result was only 0.01, but his symptoms continued through Bain's eventual referral to medical services 30 hours later. Heim also never displayed "violent propensities" or attempted to escape his cell. *Id.* at 697. His disorientation and incontinence continued the entire time he was at the jail, despite that he had a negative drug screen. All of the correctional officers performed rounds and signed logs stating that they observed Heim in his cell. Clearly, at least one of those officers — Bain — managed to notice in the process that Heim was behaving strangely, because Bain asked Strater if that behavior was typical for him. These alleged facts "distinguish [Heim] from the multitude of drug and alcohol abusers the police deal with everyday." *Id.* at 696.

The facts alleged are sufficient to state a "plausible" claim that the correctional officers were deliberately indifferent to Heim's serious need for medical treatment. *Iqbal*, 556 U.S. at 679. At this stage, it is appropriate for discovery to develop the factual record, including who knew what about Heim's condition, test results, and arrest details.

B.  Qualified Immunity.

The defendants also argue that Count II should be dismissed because they are entitled to qualified immunity. "Qualified immunity is an affirmative defense that shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Smith v. Collins*, 964 F.3d 266, 281 (4th Cir. 2020) (citation omitted). "To determine whether a complaint should survive a qualified immunity-based motion to dismiss, [courts] exercise sound discretion in following the two-prong inquiry set forth by the Supreme Court." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (internal quotation marks and citation omitted). Under the first prong, the court considers whether the facts alleged by the plaintiff establish that the defendants violated a constitutional right. *Meyers v. Balt. Cnty.*, 713 F.3d 723, 731 (4th Cir. 2013). Under the second prong, the court determines "whether the right at issue was 'clearly established' at the time of the [defendants'] conduct." *Id.* (citation omitted).

The plaintiff has met both elements to defeat any assertion of qualified immunity on the § 1983 claim at the motion to dismiss stage. The Complaint has plausibly alleged a constitutional violation involving deliberate indifference under § 1983, as explained above.

Moreover, in April 2023, the date of these events, caselaw had clearly established that the Fourteenth Amendment protected "a pretrial detainee's right to adequate medical care and freedom from deliberate indifference to his serious medical needs." *Tarashuk v. Givens*, 53 F.4th 154, 158 (4th Cir. 2022). Here, Heim alleges that for over a full day, the defendants observed him in his cell behaving in

a confused, mumbling, and disoriented manner and was also incontinent. A drug screen returned negative results, but the defendants still took no action to provide medical care for him until after his sister urged them to do so. Taking the plaintiff's allegations as true, a reasonable person could also find that the right in *Tarashuk* was sufficiently tailored to prohibit defendants' conduct here. And significantly, the defendants' qualified immunity argument comes at the motion to dismiss stage. Their "contentions boil down to disagreements over the facts," including "what they knew and when." *Thorpe v. Clarke*, 37 F.4th 926, 931 (4th Cir. 2022). But the facts alleged must be taken as true at this stage, and they support Heim's claim that the correctional officers were deliberately indifferent to his serious medical need. As a result, the defendants' Motion to Dismiss Count II is denied.

C.  Count V for Supervisory Liability.

Heim brings a supervisory liability claim against Kimberly Haug, the Superintendent of the Jail Authority. He alleges that the Jail Authority has a "custom and policy, and a widespread practice, of not providing inmates with medical care for serious medical conditions." Second Am. Compl. 17, ECF No. 19. He claims that Haug "failed to provide adequate training" to the correctional officers, which "amounted to deliberate indifference." *Id.* at 18. The defendants move to dismiss this claim because Heim does not allege a history of documented, widespread abuse by the correctional officers, or Haug's deliberate indifference to it.

Supervisory liability may be established by pleading that the supervising officer (1) "had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury"; (2) responded so inadequately "as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'" and (3) that an "affirmative causal link" between the inaction and injury existed. *Shaw ex rel. Bowen v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted). For supervisory liability to attach, the prior alleged pattern of conduct of subordinates must be "comparable" to the conduct at issue in the current case. *Danser v. Stansberry*, 772 F.3d 340, 350 (4th Cir. 2014).

The defendants argue that Heim makes only "tenuous, conclusory inferences, devoid of factual support, that Haug failed to provide adequate training to the Correctional Officers." Defs.' Resp. Opp'n Mot. Dismiss 14, ECF No. 42. The main allegation that Heim makes supporting this claim is that Bain told Strater over the phone that they had no medical assistance at the jail and there was no one there who could help him. He argues that "[t]hese statements suggest a widespread pattern and practice of [Jail Authority] personnel not obtaining care for detainees with serious medical needs." Pl.'s Mem. Opp'n Mot. Dismiss 27, ECF No. 39. Heim bolsters that allegation by citing in his Opposition to the Motion to Dismiss other lawsuits filed against Jail Authority personnel alleging that correctional officers did not promptly provide medical assistance when requested. *Id.* at 27–28. As the

-12-

defendants argue, however, those lawsuits were not referenced in the Complaint and are not factual allegations on which a ruling on a motion to dismiss may be based. *Stanfield v. Clarke*, No. 7:20-CV-00363, 2022 WL 1213277, at *3 (W.D. Va. Apr. 22, 2022) (declining to consider exhibits provided by a defendant in ruling on his motion to dismiss because they were not attached to the plaintiff's complaint, incorporated by reference, or integral to the complaint).

The factual allegations that Heim makes in the Complaint supporting his supervisory liability claim are not enough to survive a motion to dismiss. He alleges that Bain's statements about a lack of medical personnel and jail employees' "behavior" "suggest[] that Haug failed to provide adequate training to the jail employee Defendants." Second Am. Compl. 18, ECF No. 19. But the deliberate indifference required in a supervisory liability claim is a high bar. It may be shown "by demonstrating a supervisor's continued inaction in the face of documented widespread abuses." *Shaw*, 13 F.3d at 799 (internal quotation marks and citation omitted). While troubling, Heim's alleged experience at the jail and Bain's comments to his sister do not on their own establish documented or widespread abuses, or Haug's continued inaction. I will therefore dismiss the supervisory liability claim without prejudice.

Even though I will dismiss the claim, I will grant leave to amend. Such leave should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). The

Fourth Circuit has held that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Berkeley-Dorchester Ctys. Econ. Dev. Corp. v. U.S. Dep't of Health & Hum. Servs.*, 395 F. Supp. 2d 317, 325 (D.S.C. 2005) (quoting *Pittston Co. v. United States*, 199 F.3d 694, 705 (4th Cir. 1999)). Here, the facts alleged by Heim may be a "proper subject of relief" for a supervisory liability claim, *Id.,* even though further clarification is needed of which widespread customs and policies existed at the jail and how they operated, and Haug's continued inaction, beyond Bain's statement to Strater that the jail had no medical assistance or anyone that could help a disoriented inmate. *See PNC Bank, Nat'l Ass'n, v. Crab Pot, LLC*, No. 2:12-CV-2716-RMG, 2012 WL 12904015, at *3 (D.S.C. Dec. 20, 2012) (granting sua sponte leave to amend a complaint to meet the heightened pleading requirements of Fed. R. Civ. P. 9(b)). I will therefore grant Heim leave to amend his supervisory liability claim.

### D. Count VI for *Monell* Claim.

The defendants also move to dismiss Heim's *Monell* claim for similar reasons as the supervisory liability claim. I will grant the motion to dismiss Count VI but again grant leave to amend.

Regional jail authorities and other "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the

action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). The plaintiff must show that a policy promulgated by the Jail Authority was "the moving force" behind the deprivation of which he complains. *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (internal quotation marks and citation omitted). That is, the entity's official policy or custom must have played a part in the alleged violation of federal law.

As with the supervisory liability claim, Heim supports his *Monell* claim by alleging that Bain's statements in her phone call with Strater demonstrate the necessary official policy. He also again relies on the behavior of the defendants in their delay in obtaining medical care for him. But further details are required to demonstrate the Jail Authority had a policy of not providing inmates with medical care for serious conditions and that this policy was the "moving force" behind his injuries. *Id.* I will dismiss Count VI without prejudice, but for the same reasons as for Count V, I will grant Heim leave to amend his *Monell* claim.

E. Statute of Limitations and the State
Law Claims of Counts IV and VII.

In Virginia, claims related to conditions of confinement have a one-year statute of limitations. Va. Code Ann. § 8.01-243.2. Heim was transported from the jail to the hospital on April 27, 2023. He filed this suit through his guardian on

-15-

January 14, 2025. The defendants argue that the state law claims for gross negligence and vicarious liability are therefore barred by the statute of limitations. Heim raises Virginia's tolling of the statute of limitations for a person who becomes incapacitated for as long as they are incapacitated, unless a conservator or guardian is appointed. Va. Code Ann. § 8.01-229(A)(2)(b). If so, then the guardian may bring an action during the original limitations period or within one year after the guardian's appointment, whichever is later. *Id.*

"[A] person shall be deemed incapacitated if he is so adjudged by a court of competent jurisdiction, or if it shall otherwise appear to the court or jury determining the issue that such person is or was incapacitated within the prescribed limitation period." Va. Code Ann. § 8.01-229(A)(2). In August 2024, Heim was adjudged following a bench trial in the Taylor District Court of the Commonwealth of Kentucky as "wholly disabled in managing" his "personal affairs and financial resources" and placed under a guardianship. Mot. Amend Case Caption. Ex. 1, Disability J. 1, ECF No. 4-1. The court appointed his conservator and guardian, Nicole Marie Brittain, on August 2, 2024. If the statute of limitations was tolled from the day his claims accrued until Brittain's appointment, then bringing the state law claims in January 2025 was timely.

Heim was determined to be wholly disabled in managing his affairs over a year after his cause of action accrued. If his incapacitation arose only after the

-16-

original one-year limitations period lapsed, then his state law claims would be untimely. But the Complaint alleges that the injuries responsible for his incapacitation resulted from the lack of prompt treatment for the stroke he suffered on the day of his arrest. Taking that allegation as true, he "was incapacitated within the prescribed limitation period," Va. Code Ann. § 8.01-229(A)(2), and it is not appropriate to dismiss the state law claims for untimeliness at this point, at least.

The defendants also argue that Heim fails to state a claim for gross negligence against the correctional officers. Gross negligence in Virginia is "a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person." *Fijalkowski v. Wheeler*, 361 F. Supp. 3d 577, 593 (E.D. Va. 2019) (quoting *Cowan v. Hospice Support Care, Inc.*, 603 S.E.2d 916, 918 (Va. 2004)). "Because 'the standard for gross negligence [in Virginia] is one of indifference, not inadequacy,' a claim for gross negligence must fail as a matter of law when the evidence shows that the defendants exercised some degree of care." *Elliott v. Carter*, 791 S.E.2d 730, 732 (Va. 2016) (quoting *Kuykendall v. Young Life*, 261 F. App'x 480, 491 (4th Cir. 2008) (unpublished)). Here, the facts alleged do not support that the defendants exercised some degree of care. On the phone with Heim's sister, Bain asked her if his disoriented behavior was typical for him. This shows that Bain did notice Heim's behavior but delayed seeking care for him until after Strater asked three times that

he be given medical attention. And the other correctional officers are alleged to have done nothing despite having done the same rounds that Bain did. Heim sufficiently alleges gross negligence against the correctional officers.

The defendants also argue that Heim fails to state a claim against the Jail Authority for vicarious liability for gross negligence. A "rebuttable presumption" arises that an "employee was acting within the scope of his employment" when a plaintiff "alleges an employment relationship." *A.H. ex rel. C.H. v. Church of God in Christ, Inc.*, 831 S.E.2d 460, 477 (Va. 2019). The defendants' argument is that the vicarious liability claim should be dismissed because Heim fails to state an underlying claim for gross negligence. This does not defeat the presumption that the correctional officers were acting within the scope of their employment when they allegedly failed to obtain medical care for him. As a result, and for similar reasons as the gross negligence claim, Heim sufficiently alleges the vicarious liability for gross negligence claim. The defendants' Motion to Dismiss Counts IV and VII is denied.

F. Claims for Punitive Damages.

The defendants argue that Heim's demands for punitive damages should be dismissed because the underlying claims supporting them fail as a matter of law. "As an initial matter, 'punitive damages is not a 'cause of action' subject to dismissal under Rule 12(b)(6).'" *Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc.*,

-18-

21 F. Supp. 3d 620, 631 (W.D. Va. 2014) (quoting *Rathbone v. Haywood Cnty.*, No. 1:08CV117, 2008 WL 2789770, at *1 (W.D.N.C. July 17, 2008)). "A plain reading of Rule 12(b)(6) indicates that the rule may be used only to dismiss a 'claim' in its entirety." *Howard v. Impossible Foods Inc.*, No. 4:23-CV-00016, 2023 WL 7549863, at *4 (W.D. Va. Nov. 14, 2023) (quoting *Janis v. Nelson*, No. CR. 09-5019-KES, 2009 WL 4505935, at *7 (D.S.D. Nov. 24, 2009)); *see also Somera v. Indymac Fed. Bank, FSB*, No. 2:09-cv-01947-FCD-DAD, 2010 WL 761221, at *10 (E.D. Cal. Mar. 3, 2010) ("Under federal pleading standards, defendant's argument that plaintiff must plead specific facts to support allegations for punitive damages is without merit."). At this stage in the litigation, it is not appropriate to dismiss Heim's demand for punitive damages.

### III. CONCLUSION.

For the foregoing reasons, the Rule 12(b)(6) Motion to Dismiss, ECF No. 35, is GRANTED in part and DENIED in part. It is GRANTED as to Counts V and VI and they are DISMISSED without prejudice. Leave to amend Counts V and VI is GRANTED, provided the plaintiff files a Third Amended Complaint containing supplemental allegations as to Counts V and VI within 28 days from this date. The Motion to Dismiss is otherwise DENIED. Defendants need not file a further response or answer until the plaintiff files a Third Amended Complaint as permitted herein, and if such an amended complaint is so filed, or the deadline to file an

amended complaint expires without such a filing, the defendants must file a further response or answer within 14 days thereafter.

It is so **ORDERED**.

ENTER: July 30, 2025

/s/  JAMES P. JONES
Senior United States District Judge